UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

S.M.P. (XXX-XX-4801)  CIVIL ACTION NO. 13-cv-0966

VERSUS  JUDGE WALTER

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

S.M.P. ("Plaintiff") was born in 1965, earned a high school equivalency diploma, and has work experience as a hotel desk clerk, hotel night auditor, and manager of a retail store. After working almost all of her adult life, Plaintiff stopped working July 1, 2010. In a disability application document, Plaintiff was asked to list all physical or mental conditions that limited her ability to work. She listed clinical depression, Epstein Barr, fibromyalgia, migraines, mood swings, and back, neck, and joint pain. She did not list a seizure disorder, but she did later testify at her hearing before ALJ Mary Elizabeth Johnson that she suffers frequent seizures.

The ALJ found that Plaintiff had severe impairments in the form of Epstein Barr and fibromyalgia that limited her to the performance of light work, subject to some additional limitations. A vocational expert ("VE") testified that a person of Plaintiff's age and education could perform the demands of her past relevant work despite those limitations. review.

Plaintiff filed this judicial appeal and asserted that (1) the ALJ erred in not finding that her seizure disorder was a severe impairment and (2) the Commissioner's decision is not supported by substantial evidence in light of post-hearing evidence, submitted to the Appeals Council, that Plaintiff was treated for seizures. The Plaintiff has not satisfied the requirement of the regulations that she prove a seizure-related impairment through medically acceptable evidence. For that reason and those that follow, it is recommended the Commissioner's decision to deny benefits be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

    **A. Five-Step Analysis**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. It requires the ALJ to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an

impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

### B. Severe Impairment

This appeal is focused on step two, which asks whether a claimant suffers from a "severe impairment." The Fifth Circuit holds that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

It is harmless error if an ALJ does not recognize as severe one of several claimed impairments, if the omitted impairment would not have further limited the claimant's functional capacity. In this case, however, the VE testified that a person who would have to miss work twice a month or take more than ordinary breaks, which would be the case if Plaintiff's seizures were as frequent as claimed, would not be able to maintain work. Tr. 49-51. Reversal and remand would, therefore, be required if Plaintiff can show error on the step-two rejection of the seizure claim.

### C. Seizure-related Evidence Presented to the ALJ

Plaintiff testified at her hearing in January 2012 that she had seizures perhaps twice a month. The episodes were sometimes preceded by her smelling burned popcorn, after which she would fall and sometimes bite her tongue or injure herself in the fall. She said she once fell in the bathtub and almost drowned because she plugged up the drain with her body. Tr. 36. Plaintiff testified that she took Topamax to treat both her migraines and seizures. Tr. 45. Plaintiff's adult daughter testified that Plaintiff's seizure disorder was "very limiting," and the frequency of seizures had recently increased. The seizures were at first weeks apart, but now they happen sometimes two or three times a week. Tr. 41-42. Plaintiff's husband testified about Plaintiff's fibromyalgia, COPD, anxiety attacks, and migraines, but he did not mention seizures. Tr. 43-45.

The ALJ acknowledged at the hearing a log Plaintiff had kept to track her medical conditions. Tr. 45-46. The records began in May 2011, and a seizure was recorded on June 2, 2011, described as "mild, lasted about 2 minutes." Tr. 180. The next one was August 25, described as lasting 55 minutes and requiring an ambulance trip to the emergency room. Tr. 181. The emergency room physician diagnosed syncope and hypertension. She directed that seizure precautions, such as no driving or swimming alone, be taken unless cleared by a neurologist. The report does not, however, include an actual diagnosis of a seizure disorder. Tr. 235-38.

Plaintiff made note in her log of two seizures in September 2011, one that lasted five minutes and caused her to hurt her forehead in a fall, and the one in the shower that she

described at the hearing. Tr. 182. Three seizures of four to seven minutes were recorded in November 2011. One was said to have caused a fall, but none resulted in medical treatment. One seizure was recorded for December 2011 and another for January 10, 2012. Tr. 182-84. The hearing was held on January 17, 2012.

Plaintiff was examined by P. Ross Bandy, M.D. in May 2010 for complaints of muscoloskeletal pain and headaches. The report from the visit stated that Plaintiff had childhood onset of seizures from age eight until she was a young adult but she "has not had any seizures since then and has been off of anti-seizure medicines." The report did not mention any complaints of seizure problems. Tr. 208-12.

Plaintiff wrote in her log that she had a two-minute seizure on June 2, 2011. A few days later, on June 8, 2011, she was examined by Dr. Julana Lopez, M.D., who issued a consultative medical report. The report includes a history obtained from Plaintiff and the results of a physical examination. Plaintiff reported pain from fibromyalgia, migraines, and other problems, but she did not mention seizures. In the review of systems section of the report, it was recorded that Plaintiff denied seizures, despite her log claiming one happened just a few days earlier. Tr. 219.

Christina Scott, Ph.D. conducted a psychological consultative examination in July 2011. Plaintiff described her migraines, body pain, depression, and other problems, but she did not mention any seizure problem. Tr. 225-31.

### D. The ALJ's Decision

The ALJ found at step two that Plaintiff had severe impairments in the form of Epstein

Barr and fibromyalgia. She acknowledged the Stone standard that an impairment is non-severe only when it is no more than a slight abnormality which has such a minimal effect that it would not be expected to interfere with the ability to work. The ALJ then stated summarily that Plaintiff had "non-severe" impairments of depression, migraines, and seizure disorder. Tr. 12.

The written decision contained some discussion of the evidence regarding Plaintiff's claims of depression and migraines, which were rejected as non-severe. But, despite Plaintiff's testimony at the hearing that she suffered frequent seizures, the seizures were not mentioned anywhere else in the decision. There is, therefore, no indication of why the ALJ rejected the seizure claim.

### E. Post-Decision Medical Evidence

The ALJ issued her decision on March 22, 2012. Plaintiff reported to the emergency room on March 31, 2012 and reported having two seizures that day. Plaintiff reported that seizures she suffered as a teenager had ceased but then returned "last year" when she was placed on Topamax. The LSU Health-Sciences Center records state: "We have no records for this PT suggestive of seizures on our system." Plaintiff underwent a 19 channel digital EEG recording with an additional channel of EKG displayed. The report of the April 3, 2012 test states: "No focal abnormalities or asymmetries are identified. No epilptiform activity appears." Tr. 343-44. The impression was a "normal waking adult EEG" that did not show evidence of abnormality. Id. The report added that a normal EEG does not necessarily

exclude the possibility of seizures, so a repeat recording should follow a period of sleep deprivation. Id.

Days later, on April 9, 2012, the Topamax was discontinued and Plaintiff was connected to video EEG monitoring. Plaintiff had a fall off camera that caused her EEG to be disconnected for four minutes. There were no EEG changes noted before or after the event. A physician stated that it was not clear if the patient had a seizure, "but the best guess was that she did not." Tr. 351, 363. Despite 10 days in the hospital for observation, physicians did not witness or record any evidence of a seizure.

Counsel submitted evidence of the hospital stay to the Appeals Council. The Council stated, without explanation, that it considered the additional evidence but did not find it provided a basis for changing the ALJ's decision. Tr. 1-2. The Commissioner's final decision, the decision that is to be reviewed by the courts, includes the Appeals Council's denial of a request for review and requires the court to consider (in determining whether there is substantial evidence to support the decision) evidence that was submitted for the first time to the Appeals Council. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005).

### F. No Objective Medical Evidence of Seizures

Plaintiff testified to frequent seizures and was corroborated by her daughter. None of the medical evidence, however, supports her claim. The regulations provide that an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical

evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." Id.

Symptoms are described in 20 C.F.R. § 404.1528 as "your own description of your physical or mental impairment." The next sentence of the regulation clarifies: "Your statements alone are not enough to establish that there is a physical or mental impairment." Signs are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms)." Section 404.1528(b). Signs "must be shown by medically acceptable clinical diagnostic techniques." Id. Laboratory findings "are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Section 404.1528(c). The regulation lists examples of diagnostic techniques such as X-rays, chemical tests, or electrophysiological studies. The regulations are based on 42 U.S.C. § 423(d)(5)(A), which sets forth similar requirements.

Social Security Ruling 96-4p discusses these regulations and emphasizes that "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." Once the existence of an impairment is established by objective medical evidence, the testimony of the claimant and family members is relevant to establishing the degree of the impairment and how it affects the claimant's functional capacity, but such testimony cannot alone establish that an impairment exists.

Plaintiff has no acceptable medical evidence that establishes the existence of a seizure impairment.  The ALJ's decision would certainly have been better had it actually discussed the seizure testimony and why it was rejected, but the lack of objective medical evidence precludes Plaintiff from establishing reversible error with regard to her seizure claim. This is demonstrated by Harrel v. Bowen, 862 F.2d 471 (5th Cir. 1988), in which the claimant suggested a psychological component to his pain, but there was no supporting psychiatric diagnosis.  The Court stated: "In the absence of a medically determinable mental impairment, the Secretary is not required to consider the effects of such an impairment on the claimant's work capacity." Id. at 482.  Similarly, the claimant in Farley v. Colvin, 2014 WL 4954777 (M.D. Pa. 2014) testified that he quit working due to seizures once or twice a week, but all neurological testing was normal.  The Court rejected the claim because the medical tests undermined the testimony, and it acknowledged the secondary argument that "the ALJ actually would have been justified in this case in dismissing the plaintiff's seizure disorder as a non-medically determinable impairment" pursuant to Section 404.1508 and Social Security Ruling 96-4p.

**Conclusion**

Plaintiff offered only her testimony (and her daughter's), together with evidence that she complained to some physicians that she had seizures.  None of those physicians witnessed or documented actual seizure activity, and fairly intense testing in the hospital yielded no evidence of seizures.  Absent any objective medical evidence to establish the existence of a seizure impairment, the court cannot find reversible error in the

Commissioner's unexplained rejection of seizures as a severe impairment.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of October, 2014.

Mark L. Hornsby
U.S. Magistrate Judge